# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

ROBIN REIBER and GARY REIBER,   )
                                 )

        Plaintiffs,           )

                                 )

v.                             )     Case No. 1:17-CV-33

                                 )

DR. JOHN MATHEW, CURO HEALTH   )
SERVICES, LLC and SOUTHERN CARE   )
HOSPICE, INC.,                )

                                 )

        Defendants.         )

## OPINION AND ORDER

This matter is before the Court on the Partial Motion to Dismiss filed by Defendants Curo Health Services, LLC and SouthernCare Hospice, Inc. (ECF 38).[1] The motion challenges portions of the Plaintiffs' Amended Complaint (ECF 25). Plaintiffs Robin and Gary Reiber filed a response in opposition to the motion (ECF 41) and Defendants filed a reply (ECF 44). For the reasons discussed below, the motion is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to the Plaintiffs' state law claims against Curo and SouthernCare for sex discrimination, assault, battery, and intentional infliction of emotional distress, and those claims

---

[1] This case was originally assigned to Judge Joseph Van Bokkelen in the Hammond Division of this Court. On May 1, 2017, after a previous motion to dismiss was fully briefed and an Amended Complaint was filed, this case was reassigned to the Fort Wayne Division pursuant to the Northern District's General Order 2017-4, which mandated that all cases in this District be reassigned to a judicial officer sitting in the Division in which the case was originally filed (or in this case the Division to which it was removed). *See* Order Reassigning Case (ECF 34). Also, the filing of the Amended Complaint means that the original Complaint is no longer controlling. Accordingly, the Defendants' original motion for partial dismissal (ECF 18), which is technically still "pending" on the docket, is **DENIED AS MOOT**. Finally, Defendant Dr. John Mathew did not join in the motion for partial dismissal and so the Plaintiffs' claims against him are unaffected by this order and remain pending.

are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to the Plaintiffs' claims against Curo and SouthernCare for negligent hiring and supervision, negligent infliction of emotional distress, negligence, and loss of services, and those claims remain pending. Plaintiff Robin Reiber's federal sex discrimination claims brought under Title VII are unaffected by this order and remain pending as to all three Defendants.

## PROCEDURAL AND FACTUAL BACKGROUND

Robin and Gary Reiber, wife and husband, filed this lawsuit in state court on December 5, 2016. Complaint (ECF 4). Defendants Curo Health and SouthernCare removed the case to this Court on January 27, 2017, on the basis of federal question jurisdiction. Notice of Removal (ECF 1).[2] Curo Health and SouthernCare filed a joint motion for partial dismissal asking the Court to dismiss the majority of claims asserted in the original Complaint. Motion for Partial Dismissal (ECF 18). This motion was fully briefed on April 17, 2017. The Reibers, however, along with their response in opposition to the motion to dismiss, also filed a motion to amend their Complaint. Motion to Amend/Correct State Court Complaint (ECF 25). On April 26, 2017, Magistrate Judge Susan Collins, to whom this case is on partial referral pursuant 28 U.S.C. § 636, granted Plaintiffs' motion to amend and the Amended Complaint filed on that date became the controlling complaint in this case. Curo Health and SouthernCare then filed this second motion for partial dismissal as to the Amended Complaint.

The Reibers make the following factual assertions and allegations in their Amended Complaint, which are taken as true for purposes of the motion to dismiss. Robin Reiber was

---

[2] Defendant Dr. John Mathew did not formally join in the removal process but Curo Health and SouthernCare indicated in their Notice of Removal that Mathew "consents to this removal." Notice of Removal, p. 3.

"employed by Defendant, SouthernCare Hospice and worked under the supervision of SouthernCare's Medical Director, Defendant, Dr. John Mathew[]" from April 27, 2015, until October 20 when she "was forced to resign as a result of the severe and pervasive sexual harassment by Dr. Mathew, [and] the hostile work environment" to which she was subjected. Amended Complaint, pp. 1 and 10. Curo Health Services is named as a defendant because the Reibers contend that "all of SouthernCare's supervisors and employees were also employees of Curo." *Id*., p. 3.[3] Mrs. Reiber claims she was the victim of repeated, unwanted verbal and physical sexual advances by Dr. Mathew throughout her brief period of employment. She claims she reported what was happening to superiors, including Katie Huffman, who was Reiber's direct supervisor, and Staci Krueger, a vice president of SouthernCare, but that neither SouthernCare nor Curo took any action to remedy the situation. *Id*., generally. Mrs. Reiber alleges that her resignation was really a constructive discharge forced upon her by an intolerably hostile work environment and an employer (or employers) who did nothing to address the situation. *Id*., generally.

Based on these factual assertions (and additional underlying facts that will be discussed below as they become pertinent to the Court's analysis) the Reibers allege the following federal and state law claims:

1) a claim for "sexual harassment and hostile work environment" in violation of Title VII of the Civil Rights Act (Amended Complaint, Count 1, pp. 10-12);

---

[3] The Reibers also contend that "Curo was the parent corporation of SouthernCare and an employer of Robin Reiber[]" (Amended Complaint, p. 2, ¶ 6), that "[d]uring orientation, Robin was given a 'Curo Health Services Employee Handbook' which included a letter from Larry Graham, Curo's Chief Executive Officer, welcoming Robin to Curo[,]" (*id*., pp. 2-3, ¶ 12), and that "Robin's paychecks were issued by Curo[.]" (*id*., p. 3, ¶ 13).

2) a claim for retaliation under Title VII (*id.*, Count 2, pp. 12-13);

3) state law claims for "negligent hiring and supervision and *respondeat superior*" (*id.*, Count 3, pp. 13-14);

4) state law claims for "assault and battery" (*id.*, Count 4, pp. 14-15);

5) a state law claim for "intentional infliction of emotional distress" (*id.*, Count 5, pp. 15-16);

6) a state law claim for "negligent infliction of emotional distress" (*id.*, Count 6, p. 16);

7) a state law claim for negligence (*id.*, Count 7); and

8) a state law claim, asserted by Mr. Reiber, for "loss of services" (*id.*, Count 8, p. 17).

In their prayer for relief, the Reibers seek compensatory and punitive damages, attorney fees and costs, and unspecified injunctive relief to "[e]njoin the Defendants from future violations of Title VII." *Id.*, p. 17.

## STANDARD OF REVIEW

Curo Health and SouthernCare bring their joint motion for partial dismissal pursuant to Federal Rule 12(b)(6), arguing that the Reibers' Amended Complaint fails to allege any cognizable *state law* claim against either Defendant. Partial Motion to Dismiss.[4] The Defendants ask the Court to "dismiss Counts 1 (in part), 3, 4, 5, 6, 7, and 8 of Plaintiffs' [Amended] Complaint . . . with prejudice." *Id.*

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all

---

[4] The Defendants' motion for partial dismissal challenges only the Plaintiffs' state law claims, not Mrs. Reiber's Title VII claims.

4

factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Stated differently, "[a] motion under Rule 12(b)(6) challenges the sufficiency of the complaint and not the merits of the suit." *Neal v. Backs*, 2016 WL 5933429, *2 (N.D.Ind. Oct. 12, 2016) (citing *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)). In *Twombly* the Supreme Court articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (quotation marks, ellipsis, citations, and footnote omitted). A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Finally, determining whether a

complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Curo Health and SouthernCare argue that the Amended Complaint fails to state claims against them for several reasons. They note that the Amended Complaint "failed to remove claims under Indiana law for sexual harassment from Count 1. Indiana law does not recognize a private right of action for employment discrimination or harassment and the state law portions of Count 1 must be dismissed under Rule 12(b)(6)." Defendants' Memorandum in Support (ECF 39), p. 2. They contend that "[s]imilarly, Plaintiffs have not alleged sufficient facts to support the theory of *respondeat superior* in Counts 4 and 5. Dr. Mathew (who was not an employee of Curo or SouthernCare) could not have been acting as an agent of Curo or SouthernCare when he allegedly harassed [Mrs. Reiber], and Plaintiffs cannot assert claims for assault, battery, or intentional infliction of emotional distress against either company." *Id.*[5] Finally, Defendants maintain that Robin Reiber's state law claims for negligent hiring and supervision, negligent infliction of emotional distress, negligence, and loss of services fall within "the exclusivity provision of Indiana's Worker's Compensation Statute" and are therefore barred. *Id.*

**I. Motion to dismiss Count 1 in part.**

The issue regarding a state law claim for sex discrimination appears to arise out of

---

[5] The Defendants "vehemently deny Dr. Mathew was their employee" but state that "for purposes of this motion only, Curo and SouthernCare must treat Plaintiffs' allegations as true." Defendants' Memorandum in Support, p. 3, n. 2; *see also, id.*, p. 8, n. 8 ("Again, Dr. Mathew was not Defendants' employee, but Defendants must assume as much for purposes of this Motion alone."); Defendants' Reply, p. 4, n. 2 ("Indeed, Dr. Mathew was not an employee of Defendants.").

slightly confusing or inartful language in the original Complaint that was not removed from the

Amended Complaint. Count 1 of the Amended Complaint is titled "SEXUAL HARASSMENT

AND HOSTILE WORK ENVIRONMENT" and consists of 18 paragraphs. Amended Complaint,

pp. 10-12 (capitalization in original). The detailed assertions and allegations in those paragraphs

clearly state claims against the Defendants under Title VII, and these claims are not challenged

by the motion to dismiss. But, in the second to last paragraph of Count 1, the Plaintiffs state:

"The sexual harassment, assault, hostile work environment, retaliation, and Robin's constructive

discharge were in violation of Robin's rights under Title VII and Indiana State law." *Id.*, p. 12, ¶

83.

The Defendants are correct that Title VII, not Indiana state law, provides the legal

foundation for Robin Reiber's sexual harassment, hostile work environment, constructive

discharge, and retaliation claims, and so they move to dismiss those claims to the extent the

Plaintiffs are trying to bring them under *both* Title VII "and Indiana State law." In other words,

the last four words of paragraph 83 are the reason for Defendants' motion to dismiss since they

arguably imply (or at least the Defendants infer) a cause of action for sexual harassment under

state law as well as Title VII. This is unlikely since Count 1 contains express allegations of

"unwelcome verbal and physical sexual advances" (*id.*, ¶ 68) "directed at Robin because she is

female" (*id.*, ¶ 69), and which were "severe and pervasive and created a hostile working

environment for Robin[]" (*id.*, ¶ 70)–the classic language of a Title VII claim. Also, Mrs. Reiber

states in the Amended Complaint (as she did in the original Complaint) that she exhausted

mandatory administrative remedies prior to filing this lawsuit by filing a charge of

discrimination, under Title VII, with the Fort Wayne Metropolitan Human Relations

Commission" and therefore "Robin has exhausted all administrative remedies, and all conditions precedent to the institution of this lawsuit have been fulfilled." Amended Complaint, p. 2, ¶¶ 8, 10; *see also*, original Complaint, p. 3, ¶¶ 8, 10. These statements also make clear Mrs. Reiber's intent to bring her sex discrimination claims under Title VII. Neither the original Complaint nor the Amended Complaint include any mention of a "state law" discrimination claim and neither one cites or references any state statute or common law theory that would support such a claim.

Count 1 of the Amended Complaint, as its title indicates, clearly asserts a cause of action under Title VII based on allegations of sexual harassment, hostile work environment, retaliation,[6] and constructive discharge–and the Defendants are not challenging that. But four words loitering at the end of paragraph 83 give rise to an issue that probably doesn't even really exist. Unfortunately, the Reibers' brief in opposition to the motion to dismiss does not address this issue. Instead, the first half of the brief is dedicated to arguing that an agency relationship existed between SouthernCare, Curo and Dr. Mathew such that his actions are attributable to the corporate Defendants for purposes of holding them "vicariously liable for the intentional acts of Dr. Mathew[,]" (*id*., pp. 3-5), while the second half is devoted to arguing that "the Plaintiffs' negligence claims are not barred by Indiana's Worker's Compensation Act[]" (*id*., pp. 5-8). The Plaintiffs make no mention at all in their brief of any purported state law claim for sexual harassment, hostile work environment, constructive discharge, or retaliation. The Defendants argue that "[d]espite two Partial Motions to Dismiss, two responses thereto, and an Amended

---

[6] The Reibers state in Count 1 of their Amended Complaint that "SouthernCare and Curo threatened and retaliated against Robin." Amended Complaint, p. 12, ¶ 81. Count 2 of the Amended Complaint then sets out the details of Mrs. Reiber's retaliation claim, so the retaliation claim, strictly speaking, is included in both Counts.

Complaint, Plaintiffs . . . have failed to remedy the contradictions and failings that plague their Amended Complaint[]" and that "Plaintiffs have waived–several times over–any argument in response to Defendants' position that Count 1 fails to state a cognizable claim under Indiana law, and the same should be dismissed." Defendants' Reply, p. 1. It is not clear why the Plaintiffs didn't remove the words "and Indiana State Law" from Count 1, or why they did not simply concede in their response brief that they were not asserting a *state law* sex discrimination claim. It is possible that the words were included only to indicate that the Plaintiffs were asserting *both* federal claims under Title VII *and* separate state law tort claims (after all, paragraph 83 includes mention of "assault," which is a state law claim) and that the phrase "and Indiana State Law" was not intended to allege a separate or distinct state law *discrimination* claim. But since the Reibers did not delete those words before they filed their Amended Complaint, or address the issue in their brief, the Defendants were forced to assume that the issue was more than semantical and to persist in their argument that Count 1 should be dismissed to the extent that it arguably purports to include a claim for sex discrimination under Indiana state law. In any event, the Reibers have chosen not to address this issue or challenge the motion for partial dismissal of Count 1, and so the motion is granted as to Count 1 insofar as it purports or could be interpreted to allege claims for sex discrimination under Indiana state law. Robin Reiber's Title VII claims in Count 1 are unaffected by this ruling and remain pending.[7]

---

[7] In their brief in support of their motion the Defendants state that "Plaintiffs do not clarify if any of the claims are only asserted against a particular defendant. For purposes of this motion alone, Defendants assume all claims purport to be alleged against all Defendants." Defendants' Memorandum, p. 3, n. 3. Later the Defendants state that "of course Gary Reiber . . . cannot assert a claim for sexual harassment or hostile work environment against SouthernCare or Curo because he was not employed by either company. Thus, Count 1 of the Amended Complaint must only be asserted by Mrs. Reiber." *Id*., p. 4, n. 6. And later they state that

## II. Motion to Dismiss Counts 3, 6, 7 and 8.[8]

Curo and SouthernCare argue that the Reibers cannot proceed with their state law claims for negligent hiring and supervision (Count 3), negligent infliction of emotional distress (Count 6), negligence (Count 7), or loss of services (Count 8) because those tort claims are "precluded by Indiana's Worker's Compensation Statute." Defendants' Memorandum, p. 13. The Defendants note that in her original Complaint, Mrs. Reiber stated that she "suffered 'pain and suffering' and 'physical injury' in the scope and course of her employment." *Id.*, pp. 9-10 (quoting original Complaint). Therefore, argue the Defendants, "Plaintiffs' allegations that Mrs. Reiber was injured because she was fulfilling her normal job duties invalidated her negligence claims under the [Worker's Compensation] Act." *Id*, p. 10 (citing *Neal v. Backs*, 2016 WL 5933429 at *8 (N.D. Ind. Oct. 12, 2016)). The Defendants then argue that "Plaintiffs attempted to cure their error by removing references to physical injury in the Amended Complaint. . . . However, Plaintiffs hedged their bets stating in their Response to Defendants' Motion to Dismiss, [that] 'Mrs. Reiber was physically injured in the sense that there was unwelcome touching, but not in terms of needing medical attention for a physical injury.' . . . Thus, Plaintiffs

---

[8] "Plaintiffs have failed to assert any facts to support a claim for assault, battery, or intentional infliction of emotional distress on behalf of Mr. Reiber." *Id.*, p. 6, n. 7. These statements are true, but seem unnecessary since nothing in the Amended Complaint could be construed as asserting any of these claims on behalf of Gary Reiber. In any event, the Court agrees that "of course" the Title VII claims and all of the state claims, whether negligence claims or intentional tort claims, are brought on behalf of Robin Reiber and are being pursued only by Robin Reiber. The only exception is Gary Reiber's loss of consortium claim, which is personal to him and derivative of his wife's claims (and which is discussed below).

[8] The Defendants' motion for partial dismissal does not challenge Count 2 of the Amended Complaint–Mrs. Reiber's retaliation claim–likely because the Defendants recognize that it is part and parcel of her Title VII claim in Count 1 (which incorporates sex discrimination, constructive discharge and retaliation).

still claim Mrs. Reiber suffered a physical injury as it relates to her battery claim, but conveniently, not as it relates to her negligence claims. Plaintiffs cannot have it both ways and her negligence claims should be dismissed on this basis." *Id.* The long and short of it, according to the Defendants, is that Mrs. Reiber alleges she suffered injuries while at work and so any negligence based claims she might try to assert are barred by the exclusivity provision of Indiana's Worker's Compensation Act.

## A. Indiana Worker's Compensation Act.

The Indiana WCA states that "[t]he rights and remedies granted to an employee" under the WCA "on account of personal injury . . . by accident shall exclude all other rights and remedies of such employee . . . on account of such injury." Ind. Code § 22-3-2-6. The exclusivity provision of the WCA bars a court from hearing a common law claim brought by an employee if the "employee's injury occurred by accident arising out of and in the course of employment." *Sims v. U.S. Fid. & Guar. Co.*, 782 N.E. 2d 345, 349-50 (Ind. 2003).[9] If Mrs. Reiber's injuries 1)

---

[9] The issue of the applicability of the Indiana Worker's Compensation Act is properly raised in this Court under Federal Rule 12(b)(6) for failure to state a claim, even though the issue in state court would be one of subject matter jurisdiction and would be analyzed under Indiana Trial Rule 12(B)(1). Indiana courts have held that objections based on the exclusivity provision of the WCA should be brought by way of motion to dismiss for lack of subject matter jurisdiction. *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001) (when an employer defends on the basis that the employee's claim is barred by the exclusivity provision of the WCA, "the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1)") (citing *Foshee v. Shoney's, Inc.*, 637 N.E.2d 1277, 1280 (Ind. 1994)). However, the Seventh Circuit has instructed that a federal district court should analyze such a motion as a motion to dismiss under Federal Rule 12(b)(6). *Tacket v. Gen. Motors Corp.*, 93 F.3d 332, 334 (7th Cir. 1996) (when a defendant argues that a federal district court lacks subject matter jurisdiction over a state claim because a state court would lack subject matter jurisdiction, then the defendant is arguing that the plaintiff "has failed to state a claim upon which relief can be granted" and "[t]he defendant's motion . . . is more properly characterized as a motion to dismiss under [Rule] 12(b)(6)").

occurred by accident, 2) arose out of the course of her employment, and 3) occurred in the course of her employment, they arguably would be compensable only under the WCA and her tort claims would be barred, just as the Defendants insist. But the elements of a WCA claim are not the issue here and the Plaintiffs don't debate these elements specifically, arguing instead that the WCA doesn't apply from the get-go since the injuries for which they seek compensation are non-physical in nature and therefore outside the clutches of the WCA. The determinative issue before the Court is not whether the Reibers' alleged injuries occurred "by accident" or "arose out of employment," or "occurred in the course of employment," but whether the WCA applies at all given the *nature* of those injuries. Stated a bit more legalistically, the issue is whether the Plaintiffs' common law negligence claims are barred by the exclusivity provision of the Indiana Worker's Compensation Act when the Plaintiffs seek compensation only for nonphysical rather than physical injuries. Resolution of that issue requires first a discussion of the three elements of a WCA claim.

### 1. In the course of employment.

Addressing the elements in reverse order, Mrs. Reiber does not dispute that the events giving rise to her tort claims occurred *while* she was at work. Since an "accident occurs 'in the course of' employment when it takes place at the time and place of a person's employment while [the] employee is fulfilling his duties[,]" *Global Constr., Inc. v. March*, 813 N.E.2d 1163, 1166 (Ind. 2004), there is no dispute that this element is satisfied in this case.

### 2. Arising out of employment.

More than the injured employee's mere presence at work is necessary, however, for an injury to "arise out of" that work. An injury "'arises out of' employment when a causal nexus

exists between the injury . . . and the duties or services performed by the injured employee."
*DePuy, Inc. v. Farmer*, 847 N.E.2d 160, 164 (Ind. 2006). At first glance it seems counterintuitive

to characterize Mrs. Reiber's alleged injuries as being the result of an accident or having arisen

out of her work. It is easy to see, for example, how injuries sustained by a forklift driver when his

forklift malfunctions (let's assume even that the employer was negligent in maintaining the

machine) while he is operating it to unload pallets as part of his assigned duties were sustained

"by accident." This seems especially obvious given that one Indiana court has explained that an

injury is causally related to the scope of the plaintiff's employment, and therefore subject to the

WCA, "when a reasonably prudent person considers a risk to be incidental to the employment at

the time of entering into it." *Burke v. Wilfong*, 638 N.E. 2d 865, 869 (Ind.Ct.App. 1994); *see*

*also*, *Ward v. Lowe's*, 76 N.E.3d 918, 921 (Ind.Ct.App. 2017), trans. denied, 2017 WL 3608278

(Ind. Aug. 15, 2017) ("An injury arises out of employment when a causal nexus exists between

the injury sustained and the duties or services performed by the employee."). It seems

counterintuitive (if not outright absurd) to suggest that any employee would consider the risk of

injury from a sexually hostile work environment as "incidental" to her employment. On the other

hand, it seems equally counterintuitive that an employee would consider getting battered or

stabbed by a co-worker to be "incidental" to her work, but even intentional torts have been

deemed to "arise out of employment" for purposes of the WCA. *See Rogers v. Bethlehem Steel*

*Corp.*, 655 N.E.2d 73, 76 (Ind.Ct.App. 1995) (when "an assault by a co-employee . . . arises out

of the employment, where the assault is reasonably incidental to the work and where a

disagreement or quarrel between co-employees arises out of the work in which they are engaged,

and as a result one employee assaults and injuries the other, it may be inferred that the injury

arose out of the employment.") (citing 30 I.L.E. Workmen's Compensation § 130); *Hardin v. Gen. Elec. Co.*, 2003 WL 23104228, at *4 (S.D. Ind. Dec. 12, 2003) (employee's death by heart attack while at work, which was alleged to be the result of negligence of employer's in-house medical personnel, arose out of his employment and therefore fell within the exclusive purview of the WCA since sick or injured employees were expected to utilize those in-house medical services); *Foshee v. Shoney's, Inc.*, 637 N.E.2d 1277 (Ind. 1994) (employee's injuries, sustained when she was stabbed repeatedly by co-employee, "arose out of her employment" for purposes of the WCA).

### 3. Occurring by accident.

Indiana courts have explained that there is a difference, for purposes of the WCA, between an incident that occurs "*by* accident" and one that occurs as a result of "*an* accident." "The first jurisdictional question a trial court must answer is whether the injury at issue occurred 'by accident.' . . . If the injury did not occur 'by accident,' then the [WCA] does not apply and the trial court has jurisdiction." *Tippmann v. Hensler*, 716 N.E.2d 372, 375 (Ind. 1999). The *Tippmann* court explained that difference as follows:

> In *Evans* [*v. Yankeetown Dock Corp.*, 491 N.E.2d 969 (Ind. 1986)], we examined whether the phrase "by accident" focused on the unexpectedness and unusualness of the *event* causing the injury, or merely on the unexpectedness of the injury itself. We decided on the latter, concluding that injury "by accident" meant "accidental injury," not "injury caused by *an* accident."

*Id*. (quoting *Evans*, 491 N.E.2d at 974). So, even injuries sustained by an employee who is assaulted or battered by a co-employee can be deemed to be the result of "accidental injury" for purposes of application of the WCA, at least as to the employer.

### 4. Nonphysical injuries.

14

It would appear, then, that the elements of a worker's compensation claim are present in this case: the incidents giving rise to the Reibers' claims occurred in the course of Mrs. Reiber's employment, arose out of her employment (or so the Court will assume for present purposes since the Reibers don't challenge this point), and resulted in unexpected (and therefore "accidental") injury. But the inquiry doesn't end there. "Once the issue of exclusivity under the WCA is raised, the burden shifts to the plaintiff to prove that the claim falls outside the scope of the WCA." *Branham v. Celadon Trucking Serv's., Inc.*, 744 N.E.2d 514, 519 (Ind.Ct.App. 2001); *Eichstadt v. Frisch's Restaurants, Inc.*, 879 N.E.2d 1207, 1210 (Ind.Ct.App. 2008)). The Reibers argument does not focus on any of the three prongs just discussed. Instead, they argue that their claims are outside the gravitational pull of the WCA because "[t]he Act's exclusivity provision does not apply to claims where the plaintiff did not sustain a 'physical injury' or 'loss of physical function.'" Plaintiffs' Response, p. 6 (citing *Tacket*, 93 F.3d at 335 and *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1289 (Ind. 1994)). The Reibers point out that in *Perry*, the plaintiff, a car salesman, "was subjected to numerous racial slurs and humiliation from co-workers and supervisors[]" and one "physical confrontation[.]" *Id.* (citing *Perry*, 637 N.E.2d at 1285). Perry sued the owner of the dealership and several of his supervisors, asserting state law tort claims including assault, battery and slander. The trial court granted summary judgment in favor of the defendants, concluding that Perry's alleged injuries occurred in the course of his employment and therefore fell within the exclusive province of the WCA. The Indiana Supreme Court, however, held that Perry's tort claims were *not* barred by the WCA and explained as follows:

In sum, the injuries at the heart of Perry's complaint were not physical, nor was

there any impairment or disability *as those terms are comprehended by the Act*. Accordingly, we hold that the Perry's claims are not barred by the exclusive remedy clause of the [WCA] because, alone, they present no injuries covered by the Act.

*Perry*, 637 N.E.2d at 1289 (italics added). The Reibers quote this passage from *Perry* and argue that "[h]ere, as in *Perry*, the Plaintiffs did not sustain physical injuries. Consequently, the exclusivity provision of the Act does not bar the Plaintiffs' negligence claims." Plaintiffs' Response, p. 7.

### 5. Disability or impairment.

The Defendants counter this argument by contending that even if the Plaintiffs "do not seek damages for a physical injury, their negligence claims cannot succeed because Robin Reiber claims the emotional distress caused by Dr. Mathew's alleged conduct caused her such suffering she was forced to quit her job. . . . Robin Reiber is therefore unwilling or unable to do her job and her claims are barred by the Act." Defendants' Reply, p. 6. In support of this argument, the Defendants cite *Roell v. American Senior Communities, LLP, et al.*, 970 N.E.2d 270 (Ind.Ct.App. 2012), an unpublished opinion that they claim holds that "employees who claim their emotional distress caused them to be unable to work suffer a 'physical injury' or 'disability' under the Act." *Id*. Therefore, argue the Defendants, "employees allegedly 'disabled' by their emotional injuries cannot bring a claim for negligence against a prior employer." *Id*. The Defendants argue that "[s]imilarly, here, Plaintiffs specifically allege: 'Robin Reiber was forced to resign as a result of the severe and pervasive sexual harassment by Dr. Mathew, . . . the refusal of SouthernCare and Curo to reasonably prevent or attempt to correct . . . Dr. Mathew's harassment, and SouthernCare and Curo's acts of retaliation against Robin.'" *Id*. (quoting Amended Complaint, ¶ 64). "Thus,

Plaintiffs claim Defendants' actions caused Robin Reiber such emotional turmoil that she was unable to do her job and was forced to quit. She was, therefore, unable or unwilling to perform her job at SouthernCare and suffered a 'disability' under the Act." *Id*.

Curo and SouthernCare argue that the Reibers' claims are barred by the WCA because the elements of a worker's compensation claim are present and, more to the point here, because Mrs. Reiber's alleged injuries, even if nonphysical, amount to a "disability" that *is* subject to the WCA. The Reibers argue in response that their claims do not invoke the WCA and that the Defendants are misinterpreting or mischaracterizing the Plaintiffs' allegations. Plaintiffs' Response, p. 5.

Indiana law is clear that "[t]o the extent [a plaintiff] seeks damages for only emotional distress . . . those claims would not be barred by the Act." *Davis v. Tri Mfg., Inc*., 2000 WL 33281133, at *15 (S.D. Ind. Dec. 18, 2000) (citing *Tacket*, 93 F.3d at 335) (employee who alleged no physical injury and sought damages solely for emotional injuries was not injured, impaired, or disabled as defined by Indiana's Worker's Compensation Act, and thus his emotional distress claim was beyond exclusivity provisions of the Act); *Perry*, 637 N.E.2d at 1288-1289 (where injuries at heart of plaintiff's complaint were not physical, claims were not barred by Act); *Nolen v. South Bend Transportation Corp.*, 99 F.Supp.2d 953, 965 (N.D.Ind. 2000) (Worker's Compensation Act would not strip court of subject matter jurisdiction to entertain an action for intentional infliction of emotional distress where the plaintiff does not seek damages for physical injuries)). Recently, this Court addressed this same issue in *Johnson v. Town of St. John*. In that case, the plaintiff brought suit against her employer and several co-employees, asserting Title VII claims and state law claims, including a claim for negligent

retention. The employer argued that the negligent retention claim was barred by the WCA, but Judge DeGuilio concluded that it was not. He wrote that "[t]he WCA does not, however, cover Johnson's negligent retention allegations. . . . It provides an exclusive remedy only for claims involving 'personal injury or death.' Ind. Code § 22-3-2-6. The Indiana Supreme Court has interpreted 'personal injury' as used in that statute to extend only to physical injuries, impairment (defined as 'an injured employee's loss of physical functions') and disability (defined as 'a worker's physical and mental fitness for various employment opportunities')." *Johnson v. Town of St. John*, 2017 WL 1165210, at *4 (N.D. Ind. Mar. 29, 2017) (quoting *Perry*, 637 N.E.2d at 1288).[10]

In support of their position, Curo and SouthernCare cite *Neal v. Backs*, 2016 WL 5933429, a decision by this Court in which Judge Springmann found that the plaintiff's claims against his employer for negligent hiring, negligent retention, and premises liability, all of which stemmed from alleged racial harassment by co-workers, were subject to the exclusivity provision of the WCA. Judge Springmann held that "[t]he Amended Complaint makes clear that Plaintiff Neal's alleged injuries took place at the time and place of his employment, while he was

---

[10] Judge DeGuilio also found that "Johnson's complaint does not allege any [physical] injury, impairment or disability. The closest it comes is alleging that [the tortfeasor's] actions 'include[d] physical and sexual abuse,' . . . that [he] 'did strike Plaintiff' and that he caused her 'harm, injury and damages.' . . . While this leaves some ambiguity as to the exact "abuse" and "injury" Johnson suffered, at the motion to dismiss stage the Court will grant the Plaintiff the inference that she did not suffer a physical injury. *See Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016) ("When reviewing a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor."). *Johnson*, 2017 WL 1165210, at *4. So, even though the plaintiff's allegations in that case included express references to "physical abuse" and "injury," that was insufficient to invoke the WCA. This is an important point and the same reasoning applies in this case, as discussed below.

fulfilling his duties, and he does not suggest or argue otherwise. Therefore, the Court finds that Plaintiff Neal's alleged injuries occurred in the course of his employment for the purposes of the WCA. Accordingly, the WCA's exclusivity provision applies to bar Plaintiff Neal's state tort claims[.]" *Neal*, 2016 WL 5933429, at *8. Even though Neal was seeking compensation for non-physical injuries, the issue of the *nature* of his injuries was not before the Court. Put another way, the issue of the applicability of the WCA in that case turned not on the type of injuries involved, but whether those injuries occurred "by accident." Judge Springmann found that they did and therefore Neal's common law negligence claims were barred the WCA. But again, in the present case, the determinative issue–and the one on which the parties focus their arguments–is the nature of the Reibers' alleged injuries and whether they invoke the WCA in the first place. The Court agrees with the Reibers that they do not.

As another district court has explained, "[t]he Act does not bar claims for which the plaintiff does not seek relief for physical injury, disability or impairment." *Neal v. Rock-Tenn Co.*, 2005 WL 1939955, at *10 (S.D. Ind. Apr. 20, 2005) (citing *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1166 (7th Cir. 1997) (holding that Act did not bar intentional infliction of emotional distress claim)). The Court in *Neal* concluded that "it is apparent that [Ms. Neal] does not seek *damages* for physical injuries. She has offered no evidence of any physical injuries. To the extent that Ms. Neal seeks damages for nonphysical injuries, the Act does not bar her state law claims." *Id.* (citing *Tacket*, 93 F.3d at 335) ("On remand, Tacket may present evidence of any nonphysical injuries he suffered, but if he wishes to recover for any physical injuries, he must do so before the Indiana Worker's Compensation Board.").

The Defendants' argument is not wrong–purely nonphysical injuries can be subject to the WCA in limited circumstances–but it doesn't carry the day in this case. An emotional or mental injury incurred in the scope of employment is deemed subject to the WCA only if that injury rises to the level of a "disability" or "impairment" as those terms are contemplated by the Act. This brings us to the Defendants' fall-back argument, which is that Mrs. Reiber's injuries constituted a disability and are therefore swallowed up by the WCA. The Court disagrees. The Indiana Court of Appeals addressed this issue directly in *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514 (Ind.Ct.App. 2001), and explained as follows:

> [The Indiana] supreme court examined this definition in *Perry*[.] In that case, an employee brought suit against his former employer for damages resulting from harassment, racial slurs, battery, and his eventual discharge. The employer argued that the suit was barred by the exclusivity provision of the Act. The supreme court disagreed and held that Perry was entitled to bring a common law suit. . . . The court examined the definition of personal injury in the statute and found that the term includes both physical injury and the different concepts of "disability" and "impairment." . . . The court noted that impairment is a term of art for purposes of worker's compensation that denotes an injured employee's loss of physical functions and disability refers to an injured employee's inability to work. . . . Further, the extent of a disability is determined by a worker's physical and mental fitness for various employment opportunities. . . . In Perry's complaint, he alleged that he suffered embarrassment, humiliation, stress and paranoia, and that his character and reputation had been damaged. However, he had not sustained any physical injury or loss of physical function, and he was able and willing to continue to perform his duties at his employment. Thus, the court concluded that his injuries did not "constitute 'personal injury or death' as those terms are comprehended by the act." Therefore, Perry's claim was not barred by the exclusivity provision because the injuries at the heart of his complaint were not physical, and there was no impairment or disability at issue. . . . Likewise, here, the heart of Branham's injury is not physical, but emotional. He alleges that the defendants' actions caused him embarrassment, humiliation, injury to his reputation, and extreme emotional distress. Further, *in spite of his unwillingness to continue in his position at Celadon, Branham remained fit for other employment opportunities* and in fact began employment at another company upon terminating his Celadon employment. Thus, there was no disability associated with his injury. Because Branham's injury was not physical and had no

disabling quality, *it is not a personal injury in the sense that the term is defined in the Act*. The Act therefore does not apply to his claim.

*Branham*, 744 N.E.2d at 520 (italics added).

In fact, the defendant in *Branham* argued, as do Curo and SouthernCare here, that the plaintiff's injuries, notwithstanding their nonphysical nature, still constituted a disability or impairment and were subject to the Act. The court rejected that argument and explained as follows:

> Nonetheless, Celadon directs us to *Hansen v. Von Duprin, Inc.*, 507 N.E.2d 573 (Ind. 1987) for the proposition that purely emotional injuries are covered by the Act. In that case, the plaintiff experienced emotional difficulties after being shot by her husband. Her supervisor engaged in horseplay by repeatedly scaring her and making loud noises. After one such episode, she left work and was diagnosed with severe anxiety and depression which rendered her unable to work. . . . The question actually before the court was whether, in the context of an employee making a worker's compensation claim, the plaintiff's injuries occurred by accident within the meaning of the Act. In concluding that the injuries were accidental and that the Act applied, the court stated that "[w]hether the injury is mental or physical, the determinative standard should be the same." *Id*. at 576. The court was not faced with the question of whether purely emotional injuries are personal injuries under the Act. Further, the plaintiff's emotional injury did have a disabling quality. Therefore, although the case was similar to *Perry* in that a purely emotional injury was involved, *the disabling aspect of the plaintiff's condition brought it within the Act's definition of injury*. Thus, Hansen is distinguishable from the instant case. *See also Coble v. Joseph Motors, Inc.*, 695 N.E.2d 129 (Ind.Ct.App. 1998), trans. denied (plaintiff's claim for intentional infliction of emotional distress was not barred by the WCA); *Terrell v. Rowsey*, 647 N.E.2d 662, 665 (Ind.Ct.App. 1995), trans. denied (action not barred by the exclusivity provision where there was no physical injury or loss of function[.]).

*Branham*, 744 N.E.2d at 520-21 (internal citations omitted) (italics added).

Whether Mrs. Reiber's alleged injuries constitute a disability or impairment for purposes of the WCA depends, of course, on her allegations and the reasonable inferences to be drawn from them. In their Amended Complaint, the Reibers make the following pertinent allegations:

1) "Dr. Mathew's interaction with Robin quickly changed from Dr. Mathew being polite and friendly to Dr. Mathew being overly flirtatious and inappropriate. He began propositioning Robin nearly every time she was required to be in his medical office and when she was required to call Dr. Mathew regarding patient care." Amended Complaint, ¶ 21.

2) "By June 2015, the unwelcome and hostile environment that existed at the medical office was brought by Dr. Mathew to . . . meetings. At the . . . meetings, his conduct toward Robin included staring, winking, ogling, smirking and propositioning." *Id*., ¶ 22.

3) "Robin's co-workers took notice of Dr. Mathew's sexual harassment of Robin. . . . Unfortunately, instead of correcting Dr. Mathew or supporting Robin, Robin's co-workers took the conduct as an opportunity to tease, ridicule and humiliate her[.]" *Id*., ¶¶ 23-24.

4) "Director Huffman did nothing to remedy the co-workers' teasing, demeaning, and degrading of Robin. At times, Director Huffman even joined in and encouraged this behavior by laughing along with her subordinates at Robin's expense." *Id*., ¶ 25.

5) "The sexual harassment, hostile work environment, physical assault, retaliation, constructive discharge, intentional acts, inactions, and negligence committed by Defendants have caused damages to Robin and Gary, including but not limited to, pain, suffering, mental anguish, loss of services and consortium, and lost wages, for which Defendants are responsible." *Id*., ¶ 66.

6) "The overwhelmingly hostile work environment forced Robin to resign from her position with SouthernCare/Curo. The circumstances of Robin's resignation constituted constructive discharge." *Id*., ¶ 82.

7) "Robin has suffered damages as a result of the Defendants' unlawful actions." *Id*., ¶ 84.

8) "Southern Care and Curo's negligent hiring and supervision of Dr. Mathew as its Medical

22

Director proximately caused the Plaintiffs' damages including but not limited to, pain, suffering, severe emotional distress, shame, mental anguish, loss of services and consortium, and lost wages." *Id.*, ¶ 96.

9) "Dr. Mathew's conduct and actions proximately caused the Plaintiffs to suffer severe emotional distress, mental anguish, indignation, wounded pride, shame, despair, physical injury, and loss of services and consortium." *Id.*, ¶ 106.

10) "Dr. Mathew's negligent and/or reckless conduct has proximately caused the Plaintiffs to suffer severe emotional distress, mental anguish, indignation, wounded pride, shame, despair, and loss of services and consortium." *Id.*, ¶ 119.

11) "On October 20, 2015, . . . Robin contacted Director Huffman . . . and advised she could not continue working in this environment." *Id.*, ¶ 62.

Curo and SouthernCare try to characterize Mrs. Reiber's injuries as a "disability," or "impairment," but their argument attempts to place a square peg into a round hole. As the Indiana Court of Appeals has explained, a disability or impairment, to be subject to he WCA, is more than a refusal, or even emotional inability, to continue to work in a discriminatory and hostile environment: "[Plaintiff's] Amended Complaint . . . claimed that [he] suffer[ed] embarrassment, humiliation, and severe emotional and physical distress 'to the point that [his] doctor determined that [he] was fully disabled and unable to work.' . . . As such, even though [plaintiff] purported to disclaim any recovery under the WCA in his Amended Complaint, the trial court correctly concluded that the substance of [his] claims fell under the WCA and properly dismissed those claims." *Hart v. Webster*, 894 N.E.2d 1032, 1036-37 (Ind.Ct.App. 2008). The present case, however, is easily distinguishable since the allegations and assertions in the Reibers' Amended

Complaint, read as a whole and with all reasonable inferences drawn in their favor, unequivocally state claims for emotional and mental damages, not physical injury, disability or impairment. The Defendants argue that since Mrs. Reiber alleges that she was unable to continue performing her job, she is "disabled." But as the Reibers point out, the Defendants have "confused Mrs. Reiber's inability to continue her employment with [Defendants] (because of the hostile and dangerous work environment) with an inability to work anywhere. This is not the case. In fact, Mrs. Reiber applied for numerous nursing home positions following her constructive termination from SouthernCare. Thus, she was not 'impaired' or 'disabled' under the Act, and the Act does not bar the Plaintiffs' negligence claims." Plaintiffs' Response, p. 7. In other words, just like Mr. Branham, "in spite of h[er] unwillingness to continue in h[er] position at [SouthernCare], [Mrs. Reiber] remained fit for other employment opportunities" and so was not disabled or impaired to the extent that her claims would fall under the WCA. The Court agrees and concludes that the Defendants' motion for partial dismissal should be denied as to the Plaintiffs' common law tort claims for negligent hiring and supervision (Count 3), negligent infliction of emotional distress (Count 6), negligence (Count 7), and loss of services (Count 8).[11]

---

[11] As stated above, the Defendants move to dismiss Gary Reiber's loss of consortium claim asserted in Count 8 of the Amended Complaint. The Defendants correctly state that "a spouse's loss of services claim is precluded where it is premised on the same facts supporting an employee's claim that is precluded by the [Indiana Worker's Compensation Act]." Defendants' Memorandum, p. 12 (citing *Doe v. R.R. Donnelley & Sons Co*., 843 F.Supp. 1278, 1283 (S.D. Ind. 1994)). The Defendants note that "[h]ere, Mr. Reiber claims Defendants are liable for the 'loss of services, companionship, and consortium' he suffered following the injuries Mrs. Reiber claims to have suffered at work[]" and then conclude that "Mr. Reiber's claim that he lost the services of Mrs. Reiber–sexual or otherwise–is necessarily a physical injury or effect and such claims are barred by the Act." *Id*., pp. 12-13. The Court is dubious of that conclusion, but it doesn't matter since the Court has determined that Mrs. Reiber's negligence claims are not barred by the Act. If her claims survive, his derivative claim for loss of consortium does also. *Skinner v. Metro. Life Ins. Co.*, 829 F. Supp. 2d 669, 687 (N.D. Ind. 2010).

**B. Negligent infliction of emotional distress.**

The Defendants argue that Mrs. Reiber's claim for negligent infliction of emotional distress fails for another reason also. They argue that "'[t]o maintain a claim for negligent infliction of emotional distress, a plaintiff must show that she suffered a direct physical impact.' *Neal*, [2005 WL 1939955 at *10] (citing *Bader v. Johnson*, 732 N.E.2d 1212, 1221 (Ind. 2005) (stating that '[a]s modified, the [impact] rule still requires physical impact'); *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1263-64 (Ind.Ct.App. 2002) (holding that in being discharged employee did not sustain the direct physical impact required to maintain an action for negligent infliction of emotional distress); *Ketchmark v. N. Ind. Pub. Serv. Co.*, 818 N.E.2d 522, 524 (Ind.Ct.App. 2004) (rejecting argument that proof of 'direct involvement' without the requirement of impact upon or threat of injury to a person is sufficient to prove a claim for negligent infliction of emotional distress))." Defendants' Memorandum, p. 12. The Defendants contend that since Mrs. Reiber did not "suffer[] a physical *injury* as a result of Defendants' alleged negligent infliction of emotional distress . . . her claim is facially deficient." *Id*. (italics added). This argument is incorrect and the Defendants' reliance on *Neal* is misplaced. In that case, there was no dispute that "Ms. Neal has pointed to no evidence that she suffered a direct physical impact or physical change as a result of the alleged negligent infliction of emotional distress." *Neal*, 2005 WL 1939955, at *10. Furthermore, the court noted that "Ms. Neal does not claim that [the sexually harassing co-employee] ever inappropriately touched her or propositioned her." *Id*. at *2. The other cases cited by the Defendants merely state the general rule that some type of "physical impact" is required to sustain such a claim under Indiana law.

The Reibers readily concede that "Indiana law requires a 'direct physical impact'" but they also correctly point out that "'the impact need not cause a physical injury to the plaintiff and the emotional trauma suffered by the plaintiff need not result from a physical injury caused by the impact.'" Plaintiffs' Response, p. 7 (quoting *Powdertech, Inc.*, 776 N.E.2d at 1263). The Reibers state that they "have alleged multiple 'direct physical impacts[,]' . . . [including] how Dr. Mathew grabbed Mrs. Reiber's hand[,] . . . the frightening encounter . . . in which Dr. Mathew grabs Mrs. Reiber, presses himself against her, presses her breasts against his chest and Mrs. Reiber pushes him away from her. Therefore, the Amended Complaint does state a claim for negligent infliction of emotional distress." *Id.*, p. 8.

The Reibers are correct. The Indiana Court of Appeals explained the issue this way:

To maintain a cause of action for negligent infliction of emotional distress under Indiana law, a plaintiff must satisfy the "impact rule." *Alexander v. Scheid*, 726 N.E.2d 272, 283 (Ind. 2000). The impact rule originally consisted of three elements: (1) an impact on the plaintiff; (2) that causes physical injury to the plaintiff; (3) that in turn causes the emotional distress. *Id.* This traditional impact rule precluded recovery for the case in which a plaintiff experienced real mental stress in the absence of physical injury. *Id.* Recognizing the policy reasons in support of relaxing the traditional impact rule, our supreme court modified the impact rule as follows:

[W]hen . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991). The modified impact rule maintains the requirement that the plaintiff demonstrate that he or she suffered a direct physical impact. *Conder v. Wood*, 716 N.E.2d 432, 434 (Ind. 1999). However, now, the impact need not cause a physical injury to the plaintiff and the emotional trauma suffered by the plaintiff need not result from a physical

injury caused by the impact. *Id.*

*Powdertech*, 776 N.E.2d at 1263. The Reibers' Amended Complaint includes very specific assertions about the "physical impact" Mrs. Reiber experienced with Dr. Mathew and the alleged emotional trauma she experienced as a result. Her allegations are sufficient to state a claim for negligent infliction of emotional distress that survives the motion for partial dismissal.

### III. Motion to dismiss Counts 4 and 5.

The Defendants argue that the Reibers' claims for assault and battery (Count 4) and intentional infliction of emotional distress (Count 5) must be dismissed for "[f]ailure to state a claim for liability as to Curo and SouthernCare under *respondeat superior*." Defendants' Memorandum, p. 13. The Defendants argue that the Reibers cannot pursue these claims against either Curo or SouthernCare because all of them arise from the alleged illegal conduct of Dr. Mathew and the Amended Complaint fails to establish the necessary elements for a *respondeat superior* theory that would impute liability to the corporate defendants. *Id.*, p. 8. More specifically, they argue that even assuming Dr. Mathew was an agent or employee of either company, he "could not have been acting within the scope of his alleged employment when he inappropriately touched Mrs. Reiber . . . [and] there are no allegations in the Amended Complaint even suggesting that Dr. Mathew's conduct was somehow in furtherance of his purported employment duties to SouthernCare or Curo." *Id.* The Defendants also argue that the Amended Complaint does not include any "allegation that SouthernCare or Curo *intended* the alleged harassment to occur. . . . There is absolutely no allegation that SouthernCare or Curo *intended* any particular outcome." *Id.*, pp. 8-9 (italics in original). Therefore, argue the Defendants, they cannot be held accountable for Dr. Mathew's intentional torts because vicarious liability only

attaches in such circumstances when "the employer itself intended the injury" to the plaintiff. *Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598, 601 (7th Cir. 2000).

In their response brief, the Reibers argue that "[t]he allegations in the Amended Complaint, construed in favor of the Plaintiffs, show that SouthernCare, through its policies, acted in concert with Dr. Mathew to intentionally create the outcome–constructive discharge–and his acts were, in whole or in part, authorized by SouthernCare." Plaintiffs' Response, p. 3. The Reibers contend that "[t]he allegations in the Amended Complaint are sufficient to show that SouthernCare used Dr. Mathew's conduct to achieve their goal of forcing Mrs. Reiber to leave her employment[]" and "[t]herefore SouthernCare can be held vicariously liable for the intentional acts of Dr. Mathew." *Id.*, pp. 3-4. The Reibers point to specific factual assertions included in their Amended Complaint in support of their argument, writing as follows:

> The Plaintiffs have alleged facts showing that Dr. Mathew's actions were authorized by SouthernCare. After the September 29, 2015 attack by Dr. Mathew, Mrs. Reiber reported Dr. Mathew's conduct and reiterated previously reported incidents. (Complaint, ¶ 37.) In response, Director Huffman and Vice President Kreuger explained the importance of the Medical Director (Dr. Mathew) to the company. (*Id.* ¶ 39.) When it was suggested that Dr. Mathew's conduct be reported to the police, Vice President Krueger threatened Mrs. Reiber by stating "it would be a shame to lose Robin as an employee." (*Id.* ¶ 40.) Dr. Mathew was never disciplined by SouthernCare. (*Id.* ¶¶ 46-47.)

*Id.*, p. 4. The Reibers also claim that "[t]wo days after Mrs. Reiber reported Dr. Mathew's conduct, SouthernCare had posted an advertisement to fill Mrs. Reiber's position as an RN Case Manager in Fort Wayne on the SouthernCare website. . . . Coupled with this, SouthernCare also nearly doubled Mrs. Reiber's workload following her report of the battery and sexual harassment." *Id.* (citing Amended Complaint, ¶¶ 49, 52). Then, "[w]ithin days, Dr. Mathew again tried to attack Mrs. Reiber which forced her to end her employment. . . . These allegations are

sufficient to show that SouthernCare authorized Dr. Mathew's actions to force Mrs. Reiber to end her employment." *Id*., p. 5 (citing Amended Complaint, ¶ 56). In other words, the Reibers insist that SouthernCare and Curo are vicariously liable for the alleged conduct of Dr. Mathew–including the assault and battery alleged in Count 4 and the intentional infliction of emotional distress alleged in Count 5–because they knew about it, did nothing to stop it, and even endorsed it in an effort to force out a troublesome employee. The problem with this position is that it is based on speculation, conclusion and a tortured interpretation of the words "authorized" and "policy." This time, it is the Plaintiffs who are trying to fit a square peg into a round hole.

As the Defendants point out, the Reibers cite no authority in support of their argument that *respondeat superior* liability attaches under the facts alleged in this case. Defendants' Reply, p. 5. Indeed, the Reibers cite only one case in support of their theory–*Konkle v. Henson*, 672 N.E.2d 450 (Ind.Ct.App. 1996)–which they correctly note holds that "[u]nder Indiana law, an employer can be vicariously liable for the intentional and/or criminal acts of an employee." Plaintiffs' Response, p. 4. "'The test is whether the employee's actions were at least for a time authorized. . . . If there is a sufficient association between the authorized and unauthorized acts, then the unauthorized acts can be within the scope of employment.'" *Id*. (quoting *Konkle*, 672 N.E.2d at 457). The Reibers appear to be seizing on the phrases "for a time authorized" and "sufficient association between authorized and unauthorized," and then insisting that because SouthernCare and Curo wanted to get rid of Mrs. Reiber they implicitly "authorized" Dr. Mathew's alleged tortious conduct. The Defendants characterize this as a "novel theory" of *respondeat superior* liability and maintain that "[t]here is simply no legal support for this

argument[.]" Defendants' Reply, p. 5. The Court agrees. The portions of the holding in *Konkle* quoted by the Reibers are nothing more than statements of black letter Indiana law–that employers can be held liable for the torts of their employees or agents under certain circumstances. The *Konkle* case does not, however, support the Reibers' argument that *respondeat superior* liability attaches in this case.

In their reply brief, SouthernCare and Curo continue to insist that the Reibers "have not provided any factual or legal basis for their *respondeat superior* claims[]" because they have failed to "demonstrate Dr. Mathew was acting as Defendants' 'alter ego, or that the injuries were the intended product of a corporate policy.'" Defendants' Reply, p. 3 (quoting *Neal v. Rock-Tenn Co.*, 2005 WL 1939955, *10 (S.D. Ind. April 20, 2005)). The Defendants contend that "Plaintiffs must prove not that SouthernCare had some ill-will toward Robin Reiber and used Dr. Mathew as its pawn to effectuate that intent[,] but[] instead that Dr. Mathew had 'ownership and control' of Defendants or harassed Robin Reiber pursuant to a policy 'made through [Defendants'] regular decision-making channels.' Plaintiffs have not–and cannot–make either allegation." *Id.*, p. 4 (quoting *Avila v. United States Steel Corp.*, 2010 WL 2710641, *11 (N.D.Ind. July 6, 2010)).

Under Indiana law, "in order for an employee's act to fall 'within the scope of employment' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Barnett v. Clark*, 889 N.E.2d 281, 283-84 (Ind. 2008) (citations omitted).[12] The Reibers contend that Dr. Mathew's conduct was

---

[12] Alternatively, as the Defendants point out, a plaintiff could base a *respondeat superior* claim on allegations that "the corporation is the tortfeasor's alter ego[,]" meaning that "both ownership and control of the corporation are in the tortfeasor's hands." *Perry*, 637 N.E.2d at 1287. The Plaintiffs make no such allegations in this case.

"authorized" because Curo and SouthernCare refused to intervene to stop it or to discipline Dr. Mathew. But even assuming the Defendants' conduct was as alleged, it did not equate to a corporate "authorization" of Dr. Mathew's conduct. Nor was Dr. Mathew's *unauthorized* conduct sufficiently associated with his *authorized* duties (which the Plaintiffs say involved supervising the nurses and other employees of SouthernCare) so as to impute liability on the Defendants on that theory. In *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.*, the Indiana Supreme Court held that an employer whose employee's authorized duties included undressing and bathing a disabled individual could be held liable for a sexual assault of the disabled individual by the employee because the act of sexual assault was "sufficiently associated" with the employee's authorized duties. *Stropes*, 547 N.E.2d 244, 250. Similarly, an employer was subject to vicarious liability for sexual assaults committed by its employee when the employee's authorized duties included fitting boys for baseball uniforms, which involved undressing, measuring, and dressing boys. The court determined that under those circumstances, the employee's acts of sexual assault were deemed sufficiently associated with the employee's authorized duties so as to subject the employer to vicarious liability. *Southport Little League v. Vaughan*, 734 N.E.2d 261 (Ind.Ct.App. 2000). In contrast, in *Del Real v. LaCosta*, this Court found that a supervisor's tortious conduct directed at the plaintiff could *not* be imputed to his employer since the unauthorized conduct lacked any nexus to the supervisor's authorized duties. The Court explained as follows:

> There are no allegations that Supervisor John was authorized to physically touch any employee or that he touched Plaintiff within the scope of his employment. Nor is there any allegation that touching employees would further the Defendants' business interests in any way. Plaintiff attempts to establish the association between Supervisor John's authorized duties and the alleged assault, battery and

intentional infliction of emotional distress by simply asserting–without any argument or citations to case law "the supervisor and the plaintiff employee were on the job at their regular places, and the degree of physical contact would depend upon any assignment and whether assistance would be necessary." . . . However, there are no inferences consistent with the complaint that Supervisor John's assault of Plaintiff was similar to his duties as Supervisor or that he was engaging in authorized acts or serving his employer's interests when the alleged assault occurred. To arrive at such a conclusion would require speculation. As such, there can be no vicarious liability based upon these allegations.

*Del Real v. LaCosta, Inc*., 2014 WL 584878, at *2-3. In *Barnett*, the court held that an employer

whose employee's authorized duties included determining whether individuals qualified for

public aid could not be held liable for that employee's sexual assault of a client because the

employee's "alleged acts of confining, sexually touching, and raping the plaintiff were not an

extension of authorized physical contact" and were not "incidental to nor sufficiently associated

with the [employee's] authorized duties." *Barnett*, 889 N.E.2d at 284. *See also*, *Hollis v. Metro.

Sch. Dist. of Pike Twp*., 2013 WL 5656088, at *4 (S.D. Ind. Oct. 15, 2013) (tortfeasor's acts were

not incidental to or associated with authorized conduct because he was not "explicitly or

impliedly authorized to touch or confine" the plaintiff and therefore was not acting within the

scope of his employment for purposes of *respondeat superior* claims.).

As the cases discussed and cited above clearly indicate, the Plaintiffs' attempt to

characterize Dr. Mathew's alleged conduct as "authorized" under the facts of this case amounts

to a swing and a miss. In fact, with respect to Dr. Mathew's authorized conduct, the Reibers state

it included "supervision and direction of the medical care provided to SouthernCare's patients,

supervision of SouthernCare's nurses and case managers, providing nurses orders and

prescriptions for patients, and directly providing health care treatment to SouthernCare's

patients." Amended Complaint, p. 3, ¶ 16. The Reibers' allegations are insufficient to make

plausible their theory that Dr. Mathew's alleged conduct was incidental to, or sufficiently associated with, his authorized duties and vicarious liability does not attach to Curo or SouthernCare under that theory.

Mrs. Reiber's allegations also fail to state viable *respondeat superior* claims for another reason. As the Defendants point out, the Amended Complaint contains "no allegation that SouthernCare or Curo *intended* the alleged [conduct] to occur." Defendants' Memorandum, p. 8. They point out that "in Counts 4 and 5, Plaintiffs list Dr. Mathew's alleged intentional misconduct in great detail, and then conclude with only 'SouthernCare [and Curo] are liable to Plaintiffs under the theory of *respondeat superior* for Dr. Mathew's [conduct]." Defendants' Memorandum, p. 8. The Defendants argue that "[t]o show the employer *intended* the injury, Plaintiffs must demonstrate Dr. Mathew was acting as Defendants' 'alter ego, or that the injuries were the intended product of a corporate policy.'" *Id.* (quoting *Neal v. Rock-Tenn Co.*, 2005 WL 1939955, at *10). In *Neal*, the district court addressed this issue and explained as follows:

> Indiana courts have rejected a *respondeat superior* theory of liability for intentional [tort] claims. *See Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598, 601 (7th Cir. 2000); *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271, 1275 (Ind. 1994) ("[A]n intentional tort committed by a supervisor, manager or foreman could subject that individual to tort liability but would not necessarily expose the employer to liability."). To show that the employer intended the injury, "a plaintiff must show either that the corporation is the tortfeasor's alter ego or that the injuries were the intended product of a corporate policy." *Tacket*, 93 F.3d at 334-35. Ms. Neal has offered no evidence that Rock-Tenn is [the individual tortfeasor's] alter ego or that Rock-Tenn had a policy of harassing employees or of discharging employees who complained about harassment. She therefore cannot prevail on her intentional infliction of emotional distress claim against Rock-Tenn.

*Id.* As stated previously, the Reibers do not allege that Curo or SouthernCare were Dr. Mathew's "alter ego." And their argument that Dr. Mathew engaged in tortious conduct pursuant to a

33

corporate policy, like their argument that his conduct was authorized, is based on speculation, conclusion and a tortured definition of "policy." The Reibers maintain that the Defendants "authorized Dr. Mathew's conduct through their 'policy' to force Mrs. Reiber to leave her employment." Plaintiffs' Response, p. 2. (They even placed the word "policy" in quotation marks–perhaps a tacit or even unintentional admission that they are taking liberty in their use of the word.) What the Reibers are liberally calling a "policy" is actually their theory that Curo and SouthernCare, after hearing Mrs. Reiber's allegations, failed to take action to remedy the situation because they wanted to get rid of her. From these allegations the Reiber's argument takes a leap of faith and lands on the legal conclusion that the Defendants' actions (or lack thereof) constituted a "corporate policy" that the Defendants intended, or were certain to know, would result in injuries to Mrs. Reiber. This is not the stuff of which vicarious liability is made. As the Seventh Circuit has explained:

> In order to prove that the employer intended the harm, the court held that a showing of mere negligence was insufficient, even if the negligence could be characterized as reckless or wanton. *Baker*, 637 N.E.2d at 1275. Rather, the employee is required to prove that the employer deliberately intended to inflict an injury or had actual knowledge that an injury is certain to occur. *Id*. The court also emphasized that it is the employer itself that must have intended the injury, rejecting a *respondeat superior* analysis.

*Holbrook*, 219 F.3d at 601; *see also, Avila v. U.S. Steel Corp. (EC Tin)*, 2010 WL 2710641, at *11 (N.D. Ind. July 6, 2010) (plaintiff "must show that the individual who committed the tort was acting pursuant to a policy or decision that was made through the corporation's regular decision-making channels by those who had authority to do so and the policy or decision intended to cause the employee's injury.") (citing *Holbrook*, 219 F.3d at 601).

Assuming the allegations are true and the Defendants wanted to get rid of Mrs. Reiber,

their actions in that regard, according to the Amended Complaint, consisted only of allegedly refusing to intervene to stop the harassment or to discipline Dr. Mathew, which is quite different from "authorizing" his conduct. And the allegations certainly do not support the Reibers' position that Dr. Mathew was "acting pursuant to a policy or decision . . . made through the corporation's regular decision-making channels," the purpose of which was to intentionally inflict harm on Mrs. Reiber. She therefore cannot prevail on her intentional tort claims.

For all of the reasons discussed above, the Plaintiffs' allegations fail to state claims against Curo and SouthernCare for assault, battery and intentional infliction of emotional distress, based on theories of *respondeat superior* (or vicarious liability), and those claims are dismissed with prejudice. The dismissal is with prejudice because the Reibers' opposition brief does not request an opportunity to file a second amended complaint in the event some or all of her claims are dismissed under Rule 12(b)(6) and because any amendment would be futile. *See Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."); *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend . . . where the amendment would be futile."); *Estrada v. Reed*, 346 Fed.Appx. 87, 89-90 (7th Cir. 2009) (affirming the district court's denial of "a futile amendment" where the plaintiff could not state a viable claim); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend). The Reibers did not request a second opportunity to amend and, in any

event, the Court finds that any amendment would be futile as to the Plaintiffs' claims under any *respondeat superior* theory.

## CONCLUSION

For the reasons set forth above, the motion for partial dismissal filed by Defendants Curo Health Services and SouthernCare Hospice (ECF 38) is **GRANTED in part and DENIED in part.** The motion is **GRANTED** as to the Plaintiffs' state law claims against Curo and SouthernCare for sex discrimination, assault, battery, and intentional infliction of emotional distress, and those claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to the Plaintiffs' claims against Curo and SouthernCare for negligent hiring and supervision, negligent infliction of emotional distress, negligence, and loss of services, and those claims remain pending. Plaintiff Robin Reiber's federal sex discrimination claims brought under Title VII are unaffected by this order and remain pending as to all three Defendants.

Date: September 25 , 2017.

  /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana